*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0280P (6th Cir.)
File Name: 04a0280p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

───────────────

DLX, INC.,

　　　*Plaintiff-Appellant,*

　　　*v.*

COMMONWEALTH OF
KENTUCKY, et al.,

　　　*Defendants-Appellees.*

No. 03-5528

───────────────

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 02-00164—David L. Bunning, District Judge.

Argued: June 11, 2004

Decided and Filed: August 26, 2004

Before: SILER, MOORE, and BALDOCK, Circuit
Judges.[*]

───────────────

[*] The Honorable Bobby R. Baldock, Circuit Judge of the United States
Court of Appeals for the Tenth Circuit, sitting by designation.

───────────────

### COUNSEL

**ARGUED:** D. Duane Cook, Stamping Ground, Kentucky,
for Appellant. S. Bradford Smock, OFFICE OF LEGAL
SERVICES, Frankfort, Kentucky, for Appellees.
**ON BRIEF:** D. Duane Cook, Stamping Ground, Kentucky,
for Appellant. S. Bradford Smock, Mark A. Posnansky,
OFFICE OF LEGAL SERVICES, Frankfort, Kentucky, for
Appellees.

　　MOORE, J., delivered the opinion of the court, in which
SILER, J., joined. BALDOCK, J. (pp. 29-39), delivered a
separate opinion concurring in the judgment of dismissal
only.

───────────────

### OPINION

───────────────

　　KAREN NELSON MOORE, Circuit Judge. Plaintiff-
Appellant DLX, Inc. ("DLX") appeals from the dismissal of
its § 1983 action against Defendants-Appellees the
Commonwealth of Kentucky, the Kentucky Natural
Resources and Environmental Protection Cabinet ("Cabinet"),
and James E. Bickford, Secretary of the Cabinet, in his
official capacity (collectively, "Kentucky"), alleging a taking
of its property without just compensation in violation of the
Fifth Amendment. The district court dismissed the complaint
on Kentucky's Federal Rule of Civil Procedure 12(b)(1)
motion, for lack of subject matter jurisdiction, on the basis of
ripeness and the *Rooker-Feldman* doctrine. Although both of
these grounds were inapposite, we sustain this dismissal on
different reasoning, because the Eleventh Amendment bars
DLX's claims against Kentucky in federal court. The district
court's dismissal is therefore **AFFIRMED.**

# I. BACKGROUND

The Lilley Cornett Woods ("Woods"), in Letcher County, Kentucky, is a tract of land owned by the state and maintained by Eastern Kentucky University as a wildlife refuge and research facility. The Woods are designated a National Natural Landmark as "[p]robably the only surviving virgin tract of any size in the Cumberland Mountains section of the mixed mesophytic forest, which is characterized by a great variety of tree species." National Park Service, *National Registry of Natural Landmarks*, http://www.nature.nps.gov/nnl/Registry/USA_Map/States/Kentucky/nnl/lcw/index.htm. The surface rights to the Woods were originally purchased by Kentucky from the Kentucky River Coal Company, which retained the mining rights; a portion of the property was also purchased from the Cornett heirs. In 1975, the South-East Coal Company obtained a lease from the Kentucky River Coal Company to mine coal, including coal under the Woods, pursuant to which South-East acquired a permit from the state to mine 3,000 acres. Immediately before filing the amendment to South-East's then-existing permit that is at issue in this case, South-East filed for bankruptcy. DLX purchased all of South-East's assets, including the leases with Kentucky River and the state permit. At that point, DLX had a lease and permit allowing it to mine approximately 3,000 acres, which did not include any mining under the Woods. All the coal remaining in the lease is either under the Woods or can only be accessed by DLX through the land under the Woods.

DLX applied for Amendment No. 3 to the existing permit, which proposed an additional 130 acres to be added to the 3,000-acre permit area. DLX submitted an initial plan to the Cabinet, which responded with a "deficiency letter." DLX resubmitted, adding "a pillar design for subsidence control." Joint Appendix ("J.A.") at 73 (Hearing Officer's Report and Recommendation). After additional deficiency letters, a seventy-five-foot vertical cover between mine operations and

the surface was proposed in a third submittal; further deficiency letters resulted in a fourth submittal which left a 250-foot vertical cover, and proposed a fifty-percent recovery, that is, that half the coal in the area was extractable under the plan. No deficiency letter was issued by the Cabinet, but DLX in reassessing its fourth submittal decided that the proposal was unfeasible, and that a 250-foot cover would result in only twenty-five-percent recovery. DLX therefore withdrew its fourth proposal, submitting a fifth proposal instead which provided for fifty-percent recovery, but only a 110-foot vertical cover. This proposal was submitted with a letter requesting that the permit be issued or denied "as is." J.A. at 73 (Report). On April 25, 1994, the application was denied, for six reasons: the potential danger to the old-growth forest portion of the Woods; a failure to demonstrate that the mining operation could be feasibly accomplished under 405 KAR 8:010 § 14(2); that the application did not contain sufficient geological and hydrologic information to demonstrate the hydrologic consequences of the project on the Woods; that it did not present information detailing the care the applicant would take to minimize hydrologic consequences; that there was inadequate information regarding the surrounding nature habitats; and there was no information on the minimization of the impact of mining on those habitats. DLX petitioned for review, and at the hearing, the reasons for denial of the application were distilled to one: "The application for the Permit (Amendment No. 3) was acceptable to the Cabinet except for the failure of the Petitioner to agree to a minimum cover (i.e., distance from mining to the surface) of greater than 110 feet." J.A. at 75 (Report).

The Hearing Officer of the Cabinet affirmed the decision of the Cabinet to deny the permit, finding both that the Cabinet could provide extra protection for the old-growth portion of the Woods that is not required for second-growth forests and that the Cabinet had a sufficient basis for determining that the 110-foot vertical cover proposed by petitioner was inadequate

to minimize the impact to the hydrologic balance of the Woods. Noting that the petitioner bore the burdens of production and persuasion, the officer concluded that DLX failed to carry its burden of showing "that a 110-foot vertical cover would minimize disturbances to the hydrologic balance within the old-growth portion of the Lilley Cornett Woods." J.A. at 93 (Report). This report was adopted by then-Secretary Phillip J. Shepherd without comment.

Although Kentucky law allows a permit applicant to seek judicial review of a Secretary's final Order under KRS § 350.0305, DLX immediately filed a state-court takings claim, asserting that the denial of a permit to mine under the Woods constituted a regulatory taking of its property in violation of the Kentucky constitution. DLX expressly reserved its federal claims, noting,

## RESERVATION OF FEDERAL CLAIMS

DLX hereby reserves its Federal claims. DLX will pursue in Federal court any remedies it may have under the United States Constitution or under United States statutes or regulations.

J.A. at 67 (State Ct. 1st Am. Compl.). After the state trial court dismissed the case for lack of ripeness, an intermediate court reversed, and the Supreme Court of Kentucky granted the Cabinet's petition for review. *See Commonwealth v. DLX, Inc.*, 42 S.W. 3d 624, 625 (Ky. 2001). That court decided the case on the basis of exhaustion of administrative remedies, rather than ripeness. *See id.* ("We conclude that DLX failed to exhaust its administrative remedies."). Because DLX had not appealed the Secretary's final order before filing a takings claim, it could not proceed on the state constitutional takings claim. *Id.* at 626-27. Two justices (of seven) dissented, noting that DLX was prevented from raising its constitutional claims in the administrative proceedings, and that it would have been prevented from doing so in its

appeal from the decision of the Cabinet. *Id.* at 627 (Wintersheimer, J., dissenting). As the decision was one of state law only, a writ of certiorari from the United States Supreme Court was not sought.

One year after the Kentucky Supreme Court dismissed DLX's state constitutional claim, DLX filed in federal district court, alleging a violation of the Fifth Amendment actionable under 42 U.S.C. § 1983. Kentucky immediately moved for dismissal under Federal Rule of Civil Procedure 12(b)(1), arguing that the court lacked subject matter jurisdiction under the doctrine of sovereign immunity of the Eleventh Amendment, the doctrine of ripeness, the doctrine of exhaustion, the *Rooker-Feldman* doctrine, and res judicata. The district court granted the motion on March 24, 2003, on the basis of ripeness and the *Rooker-Feldman* doctrine.

## II. ANALYSIS

### A. Standard of Review

A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1133-35 (6th Cir. 1996); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). As the district court made essentially no factual findings in deciding it that lacked jurisdiction, we will treat this as a "facial" 12(b)(1) motion. We review a motion to dismiss under Rule 12(b)(1) de novo where it requires no fact-finding. *See COB Clearinghouse Corp. v. Aetna United States Healthcare, Inc.*, 362 F.3d 877, 880 (6th Cir. 2004); *RMI*, 78 F.3d at 1135 (in factual attack, district court's factual findings are reviewed for clear error).

## B. *Rooker-Feldman*

The *Rooker-Feldman* doctrine, named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), stands for the proposition that a party aggrieved by a state-court decision cannot appeal that decision to a district court, but must instead petition for a writ of certiorari from the United States Supreme Court. This circuit has devised a number of formulae for determining when a district court lacks jurisdiction under the *Rooker-Feldman* doctrine; broken down to essentials, there are two categories of cases barred by the doctrine. First, when the federal courts are asked to "engage in appellate review of state court proceedings," the doctrine necessarily applies. *Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 390 (6th Cir. 2002). In determining when a plaintiff asks for appellate review, we have in the past looked to the relief sought, *see Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 618-19 (6th Cir. 2003), or asked the question whether the plaintiff alleges "that the state court's judgment actively caused him injury [rather than] that the judgment merely failed to redress a preexisting injury," *Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458, 461 n.1 (6th Cir. 2003). *See also Hutcherson v. Lauderdale County*, 326 F.3d 747, 755 (6th Cir. 2003) ("'[T]he fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.'" (quoting *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996)); *Tropf v. Fid. Nat'l Title Ins. Co.*, 289 F.3d 929, 937 (6th Cir. 2002) (The doctrine "precludes federal court jurisdiction where the claim is a specific grievance that the law was invalidly — even unconstitutionally — applied in the plaintiff's particular case." (internal quotation marks and citations omitted)).

The second category of cases barred by *Rooker-Feldman* is those which allege an injury that predates a state-court determination, but present issues inextricably intertwined

with the claim asserted in the prior state court proceeding. Adopting Justice Marshall's phrasing in *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring), this circuit has held,

> The federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Peterson Novelties*, 305 F.3d at 391. *See, e.g., Anderson v. Charter Township of Ypsilanti*, 266 F.3d 487, 492-94 (6th Cir. 2001) (applying "inextricably intertwined" test to hold *Rooker-Feldman* abstention appropriate).[1]

---

[1] We note that two recent cases of this court have attempted to adopt the Seventh Circuit's division between *Rooker-Feldman* abstention and preclusion law, casting aside the *Pennzoil* inextricably-intertwined formulation to the extent that it operates to forbid subsequent litigation of issues already decided by a state court where the injury alleged in federal court predates the state proceeding. *See Stemler v. Florence*, 350 F.3d 578, 588-89 (6th Cir. 2003) ("As [plaintiff] is not directly challenging the state court's judgments in federal court, the doctrines of claim and issue preclusion are more properly applied to this case."); *Hood v. Keller*, 341 F.3d 593, 597-599 (6th Cir. 2003) (reversing district court's application of the *Rooker-Feldman* doctrine where plaintiff had raised facial and as-applied constitutional challenges in prior state-court criminal proceeding without applying *Pennzoil* formulation). Whatever the advisability of such a move, it is clearly foreclosed by prior cases of this court requiring the dismissal of claims that involve an injury predating the state-court proceedings on the exclusive grounds that the issues that the federal court would have to decide are inextricably intertwined with the state-court decision, in that to allow relief would require the conclusion that the state court had wrongly decided the issues before it. *See Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 390-93 (6th Cir. 2002).

DLX's claim is of the second type: the injury alleged is the permit denial that predates the state-court proceedings, not the state-court decision itself, and the relief that DLX requests is monetary. Therefore, the doctrine bars jurisdiction only to the extent that the district court must determine that the state court decided an issue wrongly in order for DLX's claim to succeed. Here, the state court decided that administrative exhaustion was a necessary component of a state constitutional takings claim; that although certain exceptions applied to that requirement, DLX met none of them; and that DLX had failed to exhaust administratively its claims. *See DLX*, 42 S.W. 3d at 624-26. As administrative exhaustion is explicitly not a component of a federal takings claim,[2] the

---

[2]The concurrence reads the Kentucky Supreme Court's opinion as applying *Williamson County* prong-one ripeness; we respectfully disagree with this interpretation of the state court's opinion. Although "prong-one" ripeness under *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 186-91 (1985), is a requirement under Kentucky law, the Kentucky Supreme Court did not rest its decision on that ground. While the Kentucky trial court "granted the Cabinet's motion for judgment on the pleadings on grounds that the case was not ripe for judicial determination and that DLX failed to exhaust its administrative remedies," the Kentucky Supreme Court concluded only "that DLX failed to exhaust its administrative remedies." *Commonwealth v. DLX, Inc.*, 42 S.W.3d 624, 625 (Ky. 2001). Although the Kentucky Supreme Court in *DLX* cited to *Williamson County*'s language regarding "prong-one" ripeness, it clearly did so to bolster its exhaustion decision, noting that the *Williamson County* Court "explained the exhaustion of administrative remedies requirement in taking cases thusly" in introducing the quotation. *Id.* at 626. Finally, in summing up its holding, the Kentucky Supreme Court made clear the grounds for its decision:

> The Court of Appeals erred in holding that making an unconstitutional-as-applied challenge in an administrative proceeding creates an exemption to the exhaustion-of-remedies requirement. Therefore, we reverse the Court of Appeals and hold that DLX's failure to exhaust its administrative remedies by failing to appeal the Secretary's order, deprived the Franklin Circuit Court of subject-matter jurisdiction to hear DLX's takings claim.

district court could have concluded that DLX had established a regulatory taking of its property under the Fifth Amendment and was entitled to relief without undermining any of the state court's conclusions. Indeed, as discussed below, the Supreme Court in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 195-97 (1985), clearly contemplates that after a state just-compensation proceeding, a federal-court action will be filed.[3] *Rooker-Feldman* is inapplicable here.

---

[2]*Id.* at 627. Because administrative exhaustion is explicitly not a component of a federal takings claim under *Williamson County*, 473 U.S. at 194 n.13 ("Exhaustion of review procedures is not required."), the district court could have concluded that DLX had made out a regulatory taking of its property under the Fifth Amendment and was entitled to relief without undermining any of the state court's conclusions. DLX's federal takings claim and its state takings claim are not "indistinguishable," as the concurrence asserts, for this reason: the federal claim does not require administrative exhaustion, where the state claim does. *Rooker-Feldman* is thus inapplicable in this case.

[3]If DLX had in fact been allowed in the state courts to reach the merits of its takings claim and then lost, it is likely that the formula adopted by this circuit as applied in our past cases would require *Rooker-Feldman* abstention, in evident tension with *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 195-97 (1985), which clearly contemplates that a takings plaintiff who loses her claim in state court will have a day in federal court. The catch-22 of the "*Williamson* trap" discussed below with respect to res judicata is also evident with respect to the *Rooker-Feldman* doctrine. We do not need to confront these tensions in this case, however, and express no opinion as to the resolution of this conflict. To the extent that recent cases of this court indicate a recognition that the "inextricably intertwined" prong of *Rooker-Feldman* may be doing the work that res judicata law should do, an *England* reservation may be sufficient to defeat a *Rooker-Feldman* argument where the *England* reservation would defeat claim preclusion. *See Ivy Club v. Edwards*, 943 F.2d 270, 284 (3d Cir. 1991) (*England* reservation sufficient to defeat *Rooker-Feldman* as well as res judicata after *Pullman* abstention).

## C. *Williamson County* Prong-Two Ripeness and Administrative Exhaustion

*Williamson County*, 473 U.S. at 186-91, 194-96, sets out two requirements for a federal regulatory-takings claim to be ripe. First, a plaintiff must demonstrate that the decisionmaking body has come to a "final" decision, allowing the federal courts to assess how much use of the property is allowed and therefore whether the regulatory decision amounts to a taking. *Id.* at 186-91. This has become known as "prong-one ripeness," and will be discussed in more detail below, as an issue of fact remains as to whether DLX satisfies prong-one ripeness. The district court, however, apparently relied on prong-two ripeness, which requires that a plaintiff "seek compensation through the procedures the State has provided for doing so." *Id.* at 194. This refers only to an action for just compensation or inverse or reverse condemnation, but *not* to review procedures. "Exhaustion of review procedures is not required." *Id.* at 194 n.13. That administrative exhaustion is not required is part of the general rule that exhaustion is never required in § 1983 suits. *See Patsy v. Fla. Bd. of Regents*, 457 U.S. 496 (1982). Finality, however, is required, so that the federal court can assess the scope of the taking; an inverse-condemnation action is required, because no violation of the Fifth Amendment attaches until a plaintiff "has used the procedure and been denied just compensation," *Williamson County*, 473 U.S. at 195; but administrative exhaustion is not required.

Kentucky argues on appeal that despite this clear language from *Williamson County*, an exhaustion requirement still applies. Kentucky cites to a number of Kentucky state cases, two district court cases, and a Federal Circuit case in which the plaintiff apparently never satisfied *Williamson County* prong-one ripeness, in never having pursued a permit. This sparse precedent is unavailing in the face of clear Supreme Court precedent that exhaustion is never required in a § 1983 case (except pursuant to Congressional reform) and that there

is no exception for takings claims. *Williamson County*, 473 U.S. at 193, 194 n.13.

The district court apparently held that because the state-court action was dismissed on the basis of a lack of jurisdiction, "DLX has not yet been denied just compensation." J.A. at 407 (D. Ct. Op. at 10). But DLX has been denied just compensation in a state suit; it sought compensation and none was awarded. That the decision was not "on the merits" in the strictest sense does not mitigate DLX's injury; its property has allegedly been taken through the denial of its permit application, and an attempt to remedy that injury in the state court has been defeated by a rule of state law. DLX has no more remedy to seek in state court; the time for application for review of the Cabinet's decision is long past, and any state-court action it files will be dismissed for want of exhaustion. DLX has been denied a federal right through the operation of a state procedural rule without analogue in federal law, and its complaint is ripe.

In its brief, Kentucky attempts to defend this aspect of the district court's holding by arguing that DLX is precluded from arguing "that it has pursued its state condemnation remedy *or* that the state condemnation remedy was inadequate, because it did not invoke it correctly." Appellees' Br. at 24. But *Williamson County* is clearly concerned with ripeness, not with giving state decisionmakers adequate opportunity to right a wrong. This is demonstrated by the *Williamson County* Court's staunch refusal to require administrative exhaustion. "Remedial procedures" are not required by *Williamson County*, because the value isn't allowing state decisionmakers to arrive at a decision, but instead is ensuring that an injury has actually occurred. DLX has not received just compensation in a state action for the same; its federal claim is ripe under *Williamson County* prong two. *See Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 283 (4th Cir. 1998) (even where plaintiff made bad-faith effort in state court, "no clear

basis under *Williamson County* to determine that [the] takings claim is other than finally ripe for adjudication in a federal forum.").

## D. Res Judicata and *England* Reservation[4]

The availability of federal courts to hear federal constitutional takings claims has often seemed illusory, because under *Williamson County* takings plaintiffs must first file in state court, as DLX did, before filing a federal claim, and because in deciding that federal claim, preclusive effect must be given to that prior state-court action under 28 U.S.C. § 1738 according to the res judicata[5] law of the state, including the doctrines of merger and bar whereby all claims which could have been brought in an earlier cause of action are precluded. *See* Michael M. Berger, *Supreme Bait & Switch: The Ripeness Ruse in Regulatory Takings*, 3 WASH. U. J. L. & POL'Y 99 (2000). Kentucky state law applies res judicata to bar not just asserted claims, but all claims which should have been raised in prior litigation. "[I]t has long been recognized that a party may not split its cause of action, therefore, if a cause of action should have been presented and the party failed to do so and the matter should again arise in another action, it will be held that the first action was res adjudicata as to all causes that should have properly been presented." *Newman v. Newman*, 451 S.W.2d 417, 419 (Ky.

---

[4] Although res judicata is not jurisdictional but an affirmative defense, it would form an independent basis for disposing of the case were it held to apply, and both parties have extensively briefed the issue.

[5] Most of the decisions use the terms "issue preclusion" and "claim preclusion" rather than "collateral estoppel" and "res judicata," to avoid confusion of the use of "res judicata" to mean the entire body of preclusion law with its narrow use as a synonym for "claim preclusion." In this opinion, we will use "res judicata" to refer to both the doctrines of claim preclusion and issue preclusion, and we will use those latter terms whenever possible.

1970). Therefore, because DLX could have brought its federal constitutional claim in state court, argues Kentucky, that claim is now barred by the operation of claim preclusion.[6] *See Migra v. Warren City Sch. Dist. Bd. of*

---

[6] Although *Newman v. Newman*, 451 S.W.2d 417, 419 (Ky. 1970), has been the law in Kentucky since its issuance and continues to be cited by Kentucky state courts for the proposition that claims which should have been brought in the first proceeding are subject to claim preclusion, *see, e.g., Whittaker v. Cecil*, 69 S.W.3d 69, 72 (Ky. 2002), this court has not consistently hewn to that principle. *Compare Stemler v. Florence*, 350 F.3d 578, 588 (6th Cir. 2003) (relying on *Yeoman v. Kentucky*, 983 S.W.2d 459, 464-65 (Ky. 1998), and *Barnes v. McDowell*, 848 F.2d 725, 730-31 (6th Cir. 1988), in allowing federal constitutional substantive due process claim to go forward despite previous state-court wrongful-death action arising from same set of facts) *with Donovan v. Thames*, 105 F.3d 291, 295 (6th Cir. 1997) ("Under Kentucky law, res judicata, or claim preclusion, 'may be used to preclude entire claims that were brought or should have been brought in a prior action. . ." (quoting *City of Covington v. Bd. of Trs. of the Policemen's and Firefighters' Ret. Fund*, 903 S.W.2d 517, 521 (Ky. 1995)) and *Consol. Television Cable Serv., Inc. v. City of Frankfort*, 857 F.2d 354, 357 (6th Cir. 1988) (rejecting claims that "could have been raised in the prior litigation" under the authority of *Newman* and *Vinson v. Campbell County Fiscal Ct.*, 820 F.2d 194, 197 (6th Cir. 1987)). *Yeoman*, 983 S.W.2d at 465, cited by *Stemler*, requires that for "claim preclusion to apply, the subject matter of the subsequent suit must be identical," and cites to *Newman* for the proposition that "there must be identity of the causes of action" for claim preclusion to apply. The key paragraph in *Newman* reads as follows:

> The general rule for determining the question of res adjudicata as between parties in actions embraces several conditions. First, there must be identity of parties. Second, there must be identity of the two causes of action. Third, the action must be decided upon its merits. In short, the rule of res adjudicata does not act as a bar if there are different issues or the questions of law presented are different. Likewise, it has long been recognized that a party may not split his cause of action, therefore, if a cause of action should have been presented and the party failed to do so and the matter should again arise in another action, *it will be held that the first action was res adjudicata as to all causes that should have properly been presented*. We stated the rule in *Hays v. Sturgill*, 193 S.W.2d 648, as follows:
>
> "The rule that issues which have been once litigated

*Educ.*, 465 U.S. 75, 85 (1984) (state-court judgments have claim-preclusive effects in § 1983 actions, barring constitutional claims not brought in prior state-court contract action). Of course, given *Williamson County*'s ripeness requirements, DLX could not have chosen to file a federal-court action first encompassing both its state and federal claims; therefore, the interaction of *Williamson County*'s ripeness requirements and the doctrine of claim preclusion could possibly operate to keep every regulatory-takings claimant out of federal court.[7] Even if only issue preclusion

---

cannot be the subject matter of later action is not only salutary but necessary in the administration of justice. The subsidiary rule that one may not split up his cause of action and have it tried piecemeal rests upon the same foundation. To permit it would not be just to the adverse party or fair to the courts. So, as said in *Combs v. Prestonsburg Water Co.*, 84 S.W.2d 15, 18: 'The rule is elementary that, when a matter is in litigation, parties are required to bring forward their whole case; and "the plea of res judicata applies not only to the points upon which the court was required by the parties to form an opinion and pronounce judgment, *but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.*"'" 451 S.W.2d at 419 (first emphasis added). The error in *Stemler* thus seems to be in following *Newman*'s formulation of the general rule of res judicata without noting the additional rule against claim-splitting. However this tangle of case law is to be resolved, it seems likely that even under *Stemler*'s erroneous reading of Kentucky's res judicata rules, a state takings claim and a federal takings claim would be identical in both "subject matter" and "cause of action" for the purpose of claim-preclusion law.

[7] Although this would not apply where a plaintiff could demonstrate that the procedures offered by the state are clearly inadequate, the distinction between a state cause of action and a cause of action in the state courts is troublesome. The Supreme Court has held that the Fifth Amendment Takings Clause is a self-executing remedy in state courts, *see First English Evangelical Lutheran Church v. County of Los Angeles*, 482

is held to be operative against plaintiffs who ripen under *Williamson County*, most plaintiffs could still be barred from the federal courthouse, as the state constitutional takings claim will often overlap substantially with the federal claim. As DLX was in fact prevented from litigating all the issues in its state takings claim which would have affected its federal takings claim, it only needs to overcome claim preclusion to litigate its federal claim, but this is unusual in these cases. The barring of the federal courthouse door to takings litigants seems an unanticipated effect of *Williamson County*, and one which is unique to the takings context, as other § 1983 plaintiffs do not have the requirement of filing prior state-court actions; reading *Williamson County*, the expectation is that an unsuccessful state plaintiff will then return to federal court.

A number of circuits have addressed this problem in a number of different contexts. Some plaintiffs have in fact litigated their federal claims in state court, and wish to avoid issue preclusion that they feel is unfair. Others chose not to litigate their federal claims in state court, and some in doing so made an explicit reservation of their federal claims to federal court, as DLX did. The courts of appeals have responded in various ways, but no court has held that where a plaintiff reserves its federal claims in an *England* reservation, named for *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964), and does not litigate them in the state courts, that *claim* preclusion will operate to bar a federal-court action. *England* concerned an action originally filed in the federal district court, which had

---

U.S. 304, 315-16 & n.9 (1987), so the "inadequate" remedy might be either the refusal of the state court to recognize that remedy, which would likely be redressable in the first instance through a petition for a writ of certiorari in the United States Supreme Court, or instead the more narrow inadequacy of having no promulgated state law providing a remedy. *See Kruse v. Village of Chagrin Falls*, 74 F.3d 694, 698-700 (6th Cir. 1996).

invoked *Pullman* abstention in refusing to hear the claim. After the state courts rendered a decision adverse to the plaintiffs, which resolved both the state-law issues that the district court's abstention was directed towards and the federal claims that had been submitted unreservedly by the plaintiffs to the state courts, the plaintiffs returned to federal court to attempt to resuscitate their federal action. 375 U.S. at 414. The district court granted defendants' motion to dismiss on the basis of res judicata. The Supreme Court reversed, noting, "There are fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims can be compelled, without his consent and through no fault of his own, to accept instead a state court's determination of those claims." *Id.* at 415. "[A] party may readily forestall any conclusion that he has elected not to return to the District Court . . . by making on the state record the 'reservation to the disposition of the entire case by the state courts' . . . . When the reservation has been made, . . . his right to return will in all events be preserved." *Id.* at 421-22 (citations omitted). Some courts have held that a plaintiff in state court for the sole purpose of ripening his claims under *Williamson County*'s second prong is in state court involuntarily, and therefore can make an "*England* reservation" of his federal takings claims for federal disposition.

While Kentucky cites three cases for the proposition that res judicata applies regardless of the need to ripen under *Williamson County*, closer examination of these cases reveals that none requires that claim preclusion apply where, as here, plaintiffs have made an *England* reservation of their federal claims. In *Wilkinson v. Pitkin County Board of County Commissioners*, 142 F.3d 1319 (10th Cir. 1998), the court noted first that the "plaintiffs asserted federal claims in the state court proceedings, which were fully adjudicated." *Id.* at 1324. Therefore, both issue preclusion *and* claim preclusion would have operated to bar the plaintiff's claim in *Wilkinson*.

The court then refused to decide "whether it is possible to reserve a federal claim, or, if so, what must be done to reserve such a claim, because at no time did plaintiffs attempt to do so." *Id.* at 1324-25. In *Palomar v. Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 363 (9th Cir. 1993), again, the plaintiff had asserted its federal claims in state court, and no attempt at reservation was made. Finally, in *Peduto v. City of North Wildwood*, 878 F.2d 725 (3d Cir. 1989), the plaintiffs asserted their federal claims in state court, and again made no attempt to reserve their claims. *Id.* at 726-27, 729 n.5. *See also Rainey Bros. Constr. Co. v. Memphis & Shelby County Bd. of Adjustment*, 967 F.Supp. 998, 1004 n.5 (W.D. Tenn. 1997) (res judicata applies where plaintiff brought federal claims in state court; because plaintiff made no reservation, court "expressly declines whether such a reservation would be effective."), *aff'd*, 1999 WL 220128 (6th Cir. Apr. 5, 1999).

Indeed, the Ninth Circuit in cases since *Palomar* has indicated that the reach of that case may be confined to *issue* preclusion, rather than *claim* preclusion, where a reservation has been made. *See San Remo Hotel v. San Francisco*, 364 F.3d 1088, 1094 (9th Cir. 2004) ("The City does not dispute that the plaintiffs' *England* reservation was sufficient to avoid the doctrine of *claim* preclusion" but issue preclusion still applies); *Macri v. King County*, 126 F.3d 1125, 1130 (9th Cir. 1997) (reservation is possible, preventing operation of res judicata);[8] *Dodd v. Hood River County* [*Dodd I*], 59 F.3d 852, 862 (9th Cir. 1995) (implicit consent by defendants to claim-splitting and reservation by state courts sufficient to reserve the claim for federal determination; issue preclusion still

---

[8]*Macri* seems possibly to misread earlier Ninth Circuit precedent in holding that neither issue nor claim preclusion applies, in direct conflict with *Dodd I* and *Dodd II, Dodd v. Hood River County*, 136 F.3d 1219, 1222 (9th Cir. 1998). The more recent *San Remo* case seems to indicate that the issue/claim preclusion split will be the law in the Ninth Circuit.

applies). Other circuits have also indicated that at least claim preclusion can be barred by an *England*-style reservation. *See Kottschade v. City of Rochester*, 319 F.3d 1038, 1041-42 (8th Cir. 2003) ("The suggestion that [an *England* reservation might prevent res judicata] has the virtue of logic and is tempting," but is premature in an initial federal-court action that is unripe under *Williamson County*); *Front Royal*, 135 F.3d at 283 (*England* reservation appropriate in *Williamson County* ripeness trap); *Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299, 1306 (11th Cir. 1992) (*Williamson County* litigants "qualify for the exception to generally applicable res judicata principles"). The Second Circuit has even gone so far as to hold explicitly that *issue* preclusion does not apply where a reservation has been made in the state-court litigation necessary to ripen a takings claim under *Williamson County*. *See Santini v. Conn. Hazardous Waste Mgmt. Serv.*, 342 F.3d 118, 130 (2d Cir. 2003). *See also Barnes v. McDowell*, 848 F.2d 725, 732 (6th Cir. 1988) (party who files in state court before filing in federal court, splitting claims, enjoys *England* protection from res judicata even without explicit reservation);[9] *Wicker v. Bd. of Educ.*, 826 F.2d 442, 446 (6th Cir. 1987) (party who files in state court subsequent to federal court but before abstention order still entitled to *England* reservation).

---

[9]This prior Sixth Circuit precedent rebuts the concurrence's suggestion that *England* reservation only applies in a case where a party reserves federal questions in state court following federal court abstention. The plaintiff in *Barnes v. McDowell*, 848 F.2d 725, 732 (6th Cir. 1988), had not even reserved his federal claims in state court, but "[b]y splitting on his own initiative the state and federal actions stemming from his discharge, Barnes achieved the very same effect that he would have had he made an *England* reservation." In the takings realm, where *Williamson County* prong-two ripeness combined with res judicata law would otherwise bar all federal takings claimants from the door of the district court—a result clearly not contemplated by the Court in *Williamson County*—this sort of extension of *England* to unwilling state court litigants is necessary to avoid grave unfairness.

The weight of circuit-level authority is therefore clearly in favor of allowing DLX's *England*-style reservation in its Kentucky state-court action to prevent the application of the doctrine of claim preclusion in its subsequent federal-court takings action. We join our sister circuits in holding that a party's *England* reservation of federal takings claims in a state takings action will suffice to defeat claim preclusion in a subsequent federal action. It is unnecessary to decide in this case whether or not the Second Circuit's holding in *Santini* that issue preclusion is also inapplicable is the better rule, because the Kentucky Supreme Court did not decide any issues that affect DLX's right to recovery on its federal claim. Therefore, the doctrine of res judicata does not bar DLX's federal takings claim.[10]

---

[10]One final note on ripeness: We have recognized in the past that res judicata is clearly inapplicable as to claims that were unripe at the time of a prior court proceeding, *see Katt v. Dykhouse*, 983 F.2d 690, 691 (6th Cir. 1992), and this might seem to operate to save DLX's federal claims, *see Buckles v. Columbus Mun. Airport Auth.*, No. 02-3286, 2004 WL 346045, *3 n.1 (6th Cir. Feb. 23, 2004), but this conclusion misunderstands the nature of ripeness. Although *Williamson County* speaks broadly in terms of when the federal right of action ripens, prong-two ripeness does not necessarily operate to bar the litigation of a federal claim in the state courts because ripeness is a doctrine governing justiciability in the *federal* courts, pursuant to Article III or prudential concerns. *See generally* ERWIN CHEMERINSKY, FEDERAL JURISDICTION §§ 2.1, 2.4 (3d ed. 1999). This is borne out by the number of cases where plaintiffs assert federal claims in the state courts contemporaneous with or even instead of their state constitutional claims. *See, e.g., Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992) (reviewing state-court decision on federal takings claim). Our question is whether or not the Kentucky state court would have heard DLX's federal takings claim or dismissed it as unripe, and whether or not DLX's federal claim would have been ripe in the Kentucky state court is a question that must be adjudged with respect to Kentucky ripeness law. It appears that the only ripeness requirement imposed by the Kentucky courts on federal takings claims is one equivalent to *Williamson County* prong-one ripeness. *See Spanish Cove Sanitation, Inc. v. Louisville-Jefferson County Metro. Sewer Dist.*, 72 S.W.3d 918, 921 (Ky. 2002). Therefore, if DLX's federal takings claim is ripe in federal court now, it was ripe in state court at the

### E. *Williamson County* Prong-One Ripeness

As noted above, *Williamson County*'s first ripeness requirement for federal regulatory takings claims in federal court is that the state or local decisionmakers have made a final decision, such that a federal court assessing whether or not a taking has occurred can look to that decision in assessing what use can be made of the property. *Williamson County,* 473 U.S. at 186-91. Kentucky vigorously asserts that DLX has not adequately demonstrated a final decision on the part of the Cabinet; DLX equally vigorously asserts that in fact a final decision has been made. The parties focus their attention on the amount of vertical cover required by the Cabinet: DLX argues that the Cabinet is immovably settled on a 250-foot vertical cover; Kentucky argues that some amount of vertical cover between 110 feet and 250 feet may be acceptable to the Cabinet.

*Williamson County* itself concerned a developer's application for a construction permit from the local planning commission. In 1973, a predecessor in interest to the plaintiff had submitted a preliminary design to the commission, which was approved; the design was continuously reapproved during development and construction, even after the zoning laws changed, through 1980. A final plan was submitted in 1980, which was disapproved by the Commission; after a change in ownership, revised plans were submitted, which were also disapproved. These decisions were held not to be final by the Court, however, because variances could be sought for "five of the Commission's eight objections to the" plan. *Id.* at 188. Until those variances were sought and rejected, the takings claim was not yet ripe. The next Term, the Court applied the ripeness requirement again in *MacDonald, Sommer & Frates v. County of Yolo*, 477 U.S. 340, 352 (1986), holding that a developer who had only submitted one proposal that had been

time of the state-court litigation.

rejected did not have a ripe takings claim, noting, "Rejection of exceedingly grandiose development plans does not logically imply that less ambitious plans will receive similarly unfavorable reviews." *Id.* at 353 n.9. But three subsequent Supreme Court decisions found *Williamson County* ripeness. In *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1013 & n.3 (1992), the Court, over dissent, held that because the governing body stipulated that no permit would have been issued, the claim was not unjusticiable under *Williamson County*. In *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725 (1997), the Court noted that the requirement "responds to the high degree of discretion characteristically possessed by land use boards in softening the strictures of the general regulations they administer," *id.* at 738, in the course of holding that because in the instant case, the agency had no discretion over whether the plaintiff would be allowed to use her land, "no occasion exists for applying *Williamson County*'s requirement." *Id*. at 739. Finally, in *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001), in finding a regulatory taking in a state's refusal to allow a landowner to develop wetlands property, the Court rejected a suggestion that "while the Council rejected petitioner's effort to fill all of the wetlands, and then rejected his proposal to fill 11 of the wetland acres, perhaps an application to fill (for instance) 5 acres would have been approved." *Id.* at 619. In doing so, the Court examined the rejection of both proposals, studying the grounds relied upon, and determined that no development would be permitted: "Further permit applications were not necessary to establish this point." *Id.* at 621. Thus, *Williamson County* prong-one ripeness is a factual determination, taking into account all relevant statutes, ordinances, and regulations, that the decisionmaker has arrived at a final determination with respect to the permit applicant's use of her property, and that that determination is one which will allow a court to determine whether a regulatory taking has taken place. This circuit has also recognized a "futility exception," which is in substance similar to *Palazzolo*'s rule, whereby a plaintiff need not seek

a variance from a regulation where it would be an "idle and futile act"; the exception only applies where a landowner has "submitted at least one meaningful application for a variance." *Bannum, Inc. v. City of Louisville*, 958 F.2d 1354, 1363 (6th Cir. 1992) (internal citations and quotation marks omitted); *see also Seguin v. City of Sterling Heights*, 968 F.2d 584, 587-88 (6th Cir. 1992) (refusing to decide whether futility exists).

DLX argues that its application for a permit providing less than 250 feet of vertical cover would have been futile, and points to testimony elicited during the administrative hearing from the Cabinet reviewer, Larry Peterson ("Peterson"). Kentucky responds that Peterson's testimony actually reveals that the officer might have been willing to approve less vertical cover, if DLX had submitted additional data supporting such a move. It seems at first blush that Kentucky has the better of this argument — DLX's futility argument is based on a mischaracterization of Peterson's testimony, and examining that testimony reveals that he would have been receptive to a permit application stipulating less vertical cover accompanied by additional data:

Q.  So it is fair to say, isn't it, that if your concern was connection of the pressure dome fractures to the maximum stress relief fractures that no permit less than 250 feet would have been acceptable?
. . .
A.  Unless they demonstrated through some other data, which they were given opportunity to do, that the fractures weren't that deep or my concerns weren't that justified, yes.
Q.  But based on the data that you did have?
A.  Yes.
Q.  We have been all through that. The data that you did have, including the data that said most of the water moved within 100 feet of the surface, based on the data that you did have, it is fair to say that you

would not have approved a permit that left only a 240-foot vertical cover, isn't it?
A.  Yes.

J.A. at 359 (Tr. of Admin. Hr'g). In its reply brief, DLX argues that no previous case requires a plaintiff to submit scientific surveys before finality will be found, and asserts that DLX could have proven no set of scientific facts that would have convinced the decisionmaker to allow DLX's permit.

Because resolution of this question requires factual inquiry, and the question is one on which the district court did not pass, we decline to resolve this factual question on appeal. Assuming all of DLX's allegations in its federal complaint to be true, namely, "The actions of the Commonwealth rendered more than one million tons of high quality coal unmineable," J.A. at 7 (Compl. ¶ 14), jurisdiction exists; to deny jursidiction based on a factual attack seems inappropriate without further proceedings below. We therefore choose to rely on Eleventh Amendment immunity in affirming the district court.[11]

---

[11] Although we would normally decline to decide the constitutional question — whether Eleventh Amendment immunity protects a state against a federal takings claim in a federal court — in favor of the factual question, *see, e.g., Adams v. City of Battle Creek*, 250 F.3d 980, 986 (6th Cir. 2001) (citing *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)), we believe the procedural posture of this case mandates that, rather than subject the parties to further litigation on an ultimately irrelevant issue, we affirm the district court on this ground.

## F. Eleventh Amendment Immunity

Finally, Kentucky[12] argues that it is immune from § 1983 suit under the Eleventh Amendment[13] as 42 U.S.C. § 1983 does not abrogate its immunity. *See Quern v. Jordan*, 440 U.S. 332, 338-41 (1979) (reaffirming *Edelman v. Jordan*, 415 U.S. 651 (1974)). This is something of a mischaracterization of the applicable law; "[t]he barrier [is] not . . . Eleventh Amendment immunity . . . . The stopper [is] that § 1983 creates no remedy against a State." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997). Treating DLX's claim as a self-executing reverse condemnation claim, however, we conclude that the Eleventh Amendment's grant of immunity protects Kentucky from that claim as well. The Supreme Court has explicitly stated that just compensation "is, like ordinary money damages, a compensatory remedy . . . [and therefore] legal relief," and moreover, that a federal-court suit alleging a taking seeks "not just compensation *per se* but rather damages for the unconstitutional denial of such compensation," *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 710-11 (1999); therefore, the *Ex Parte Young* exception is inapplicable. In response, DLX points to commentators who have suggested the question remains open,[14] relying on dicta in two Supreme Court takings cases, *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 314 (1987), and *City of Monterey*, 526 U.S. at 714 (1999) (Kennedy, J., plurality opinion) ("Even if the sovereign immunity rationale retains its vitality in cases where [the Fifth] Amendment is applicable, *cf. First English* . . ."). *See, e.g.* RICHARD H. FALLON ET AL., HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM [hereinafter HART & WECHSLER], at 379 & n.32 (4th ed. 1996), Vicki C. Jackson, *The Supreme Court, the Eleventh Amendment, and State Sovereign Immunity*, 98 YALE L.J. 1, 115 & nn.453-54 (1988); Thomas W. Merrill, *The Landscape of Constitutional Property*, 86 VA. L. REV. 885, 981 & n.351 (2000); Carlos Manuel Vásquez, *What is Eleventh Amendment Immunity?*, 106 YALE L.J. 1683, 1709 & n.119-21 (1997).

But closer examination of each of these authorities reveals that they are concerned not with abrogating the states' Eleventh Amendment immunity in *federal* court, but with noting that the Fifth Amendment's requirement of just compensation forces the states to provide a judicial remedy in

---

[12]There is no dispute that each defendant — Kentucky, the Cabinet, and Secretary Bickford — is "the state" for the purposes of determining their susceptibility to suit.

[13]"Eleventh Amendment immunity is an issue of jurisdiction, but the issue is no longer classified as simply a question of subject matter jurisdiction." *Ernst v. Roberts*, No. 02-2287, ___ F.3d ___, 2004 WL 1792631, *3 n.4 (6th Cir. Aug. 12, 2004). Therefore, a motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction may not be procedurally correct, but all that is required to properly raise this "affirmative defense to jurisdiction" is a motion citing to "the Eleventh Amendment itself." *Id.* at *3, *15.

[14]DLX also argues that our decision in *Arnett v. Myers*, 281 F.3d 552 (6th Cir. 2002), is binding precedent that the Eleventh Amendment is no bar to a Fifth Amendment claim against a state in federal court, and that if the Eleventh Amendment does not prevent the Supreme Court from hearing such cases as *Palazzolo v. Rhode Island*, 533 U.S. 606, 619-26 (2001), on certiorari from state courts, it does not prevent a suit in the district court against a state. Both of these arguments lack merit. In *Arnett*, the plaintiffs clearly only sought declaratory and injunctive relief, thus allowing the case under the *Ex Parte Young* exception. As for DLX's second contention, "It was long ago settled that a writ of error to review the final judgment of a state court, even when a State is a formal party [defendant] and is successful in the inferior court, is not a suit within the meaning of the Amendment." *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 27 (1990) (quoting *General Oil Co. v. Crain*, 209 U.S. 211, 233 (1908) (Harlan, J., concurring)) (alteration in original).

their *own* courts. "[T]he Constitution mandates the availability of effective remedies for 'takings' and for the coercive collection of taxes, and accordingly requires courts to provide those remedies, 'the sovereign immunity States traditionally enjoy in their own courts notwithstanding.'" HART & WECHSLER, supra, at 379 (quoting *Reich v. Collins*, 513 U.S. 106, 110 (1994)). *Reich* explicitly holds that the requirement of a remedy for unconstitutional taxes does not trump "the sovereign immunity States enjoy in *federal* court, under the Eleventh Amendment." 523 U.S. at 110. *First English* makes clear that the Fifth Amendment Takings Clause is a self-executing remedy, notwithstanding sovereign immunity. *See* 482 U.S. at 316 n.9. Therefore, had DLX brought a federal claim with its state claim in state court, the Kentucky courts would have had to hear that federal claim, and likely could not have required exhaustion as a prerequisite to hearing the federal claim, *see Felder v. Casey*, 487 U.S 131, 146-47 (1988), but this court is powerless to hear it. *See John G. & Marie Stella Kenedy Mem'l Found. v. Mauro,* 21 F.3d 667, 674 (5th Cir. 1994) (Eleventh Amendment bars Fifth Amendment inverse condemnation claim brought in federal district court); *Robinson v. Ga. Dep't of Transp.*, 966 F.2d 637 (11th Cir. 1992) (same); *Broughton Lumber Co. v. Columbia River Gorge Comm'n*, 975 F.2d 616, 618-20 (9th Cir. 1992) (same); *Citadel Corp. v. Puerto Rico Highway Auth.*, 695 F.2d 31, 33 n.4 (1st Cir. 1982) (same); *Garrett v. Illinois*, 612 F.2d 1038, 1040-41 (7th Cir. 1980) (takings claim filed in federal court against the state barred by Eleventh Amendment).

Although *Alden v. Maine*, 527 U.S. 706 (1999), might seem to foreclose the requirement that states be susceptible to suit in their own courts on takings claims, a close reading of *Alden* reveals that it would present no bar to such a claim. In *Alden*, the Court held only "that the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts." *Id*. at 712. The *Alden*

Court specifically preserved *Reich*'s promise of a state-court remedy, noting, "The obligation arises from the Constitution itself; *Reich* does not speak to the power of Congress to subject States to suits in their own courts." *Id.* at 740. Thus, where the Constitution requires a particular remedy, such as through the Due Process Clause for the tax monies at issue in *Reich*, or through the Takings Clause as indicated in *First English*, the state is required to provide that remedy in its own courts, notwithstanding sovereign immunity. *See SDDS, Inc. v. South Dakota*, 650 N.W.2d 1, 8-9 (S.D. 2002) ("South Dakota's sovereign immunity is not a bar to SDDS's Fifth Amendment takings claim."); *Boise Cascade Corp. v. Oregon*, 991 P.2d 563, 565-69 (Or. 1999) (relying on *First English* in holding that "at least some constitutional claims are actionable against a state, even without a waiver or congressional abrogation of sovereign immunity, due to the nature of the constitutional provision involved"). *But see Manning v. Mining & Minerals Div. of the Energy, Minerals, & Natural Res. Dep't,* 2004-NMCA-52, ¶ 4-¶ 12 (Ct. App. 2004) (rejecting *Boise Cascade*), *cert. granted*, No. 28,500, 2004-NMCERT-005 (May 11, 2004).

### III. CONCLUSION

Because Kentucky enjoys sovereign immunity in the federal courts from DLX's federal takings claim, the district court was correct to dismiss the DLX's complaint for want of jurisdiction. The judgment of the district court is therefore **AFFIRMED**.

———————————

**CONCURRENCE**

———————————

BALDOCK, Circuit Judge, concurring. I respectfully concur in the Court's judgment of dismissal only. Although the Court's Eleventh Amendment analysis appears sound, in my opinion we need not reach the Eleventh Amendment question. Rather, the Kentucky Supreme Court's decision implicates the *Rooker-Feldman* doctrine thereby precluding the necessity of resolving the myriad of issues raised in this case. In the alternative, because the "*England*-reservation" doctrine is inapplicable, res judicata bars DLX's federal takings claim. I will discuss each issue in turn.

I.

Under the *Rooker-Feldman* doctrine, lower federal courts do not have jurisdiction to review state court decisions; only the United States Supreme Court has jurisdiction to correct state court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983).[1] The *Rooker-Feldman* doctrine deprives lower federal courts of jurisdiction to engage in appellate review of state court decisions or to adjudicate federal claims that are "inextricably intertwined" with a state court judgment. *See Peterson Novelties, Inc. v. City of Berkley*, 305 F.3d 386, 390 (6th Cir. 2002). A federal claim is "inextricably intertwined" with a state court judgment when the federal claim succeeds only to the extent

———————————

[1] The Supreme Court's lack of jurisdiction to review the Kentucky Supreme Court's judgment in this case as a result of DLX's failure to raise its federal claims in state court is not fatal to the application of *Rooker-Feldman. See Feldman*, 460 U.S. at 484 n.16 ("By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state-court decision in any federal court.").

that the state court wrongly decided the issues before it. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring); *Anderson v. Charter Township of Ypsilanti*, 266 F.3d 487, 492 (6th Cir. 2001).

In this case, DLX's federal takings claim is "inextricably intertwined" with the Kentucky state court judgment. Specifically, the Kentucky Supreme Court dismissed DLX's state takings claim for want of jurisdiction based on its application of federal law; namely, the standards set forth in *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985). *See Commonwealth v. DLX, Inc.*, 42 S.W.3d 624, 627 (Ky. 2001). DLX then filed a federal takings claim in district court. To ensure DLX's takings claim was ripe for review, the district court, like the Kentucky Supreme Court, applied the Supreme Court's two-prong ripeness test from *Williamson*. Under *Williamson*, a Fifth Amendment takings claim is not ripe for review until (1) the government entity charged with implementing the regulations has reached a final decision inflicting an actual, concrete injury, *and* (2) if a State provides an adequate procedure for seeking just compensation, the property owner has used the procedure and been denied just compensation. 473 U.S. at 193-95. The ripeness test is conjunctive: both prongs must be satisfied.

Accordingly, the district court first sought to determine whether a final decision inflicting an actual, concrete injury existed under prong one. The district court indicated, however, a close reading of the Kentucky Supreme Court opinion revealed that the court had already decided *Williamson* prong one and determined no final decision, and thus no injury existed. *See DLX, Inc.*, 42 S.W.3d at 626-27. In my opinion, the district court properly read the Kentucky Supreme Court's opinion. In *DLX, Inc.*, the Kentucky Supreme Court dismissed DLX's state takings claim for lack of subject matter jurisdiction. *See id.* at 627. The court reasoned the state agency had not yet arrived at a final,

definitive position inflicting an injury because DLX failed to exhaust its administrative remedies. *See id.* The Kentucky Supreme Court relied upon the *Williamson* decision to reach its conclusion that no final decision inflicting an injury existed. *See id.* at 626-27. The Kentucky Supreme Court explained that "until a statute has been applied, there can be no unconstitutional application . . .[and] it is the administrative action which determines the extent, if any, of the constitutional injury." *Id.* at 626. Immediately thereafter, the court noted "[t]he United States Supreme Court addressed *this same issue* in [*Williamson*]." *Id.* (emphasis added). The court then quoted *Williamson*'s first prong at length:

> Our reluctance to examine taking claims until such a *final decision* has been made is compelled by the very nature of the inquiry required by the Just Compensation Clause. Although the question of what constitutes a taking for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty, . . . the Court consistently has indicated that among the factors of particular significance in the inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations . . . . Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question.

*Id.* (quoting *Williamson*, 473 U.S. at 190-91) (emphasis added) (internal quotation and citation omitted).

The district court, after considering the Kentucky Supreme Court's analysis, reasonably concluded *Rooker-Feldman* applied. The district court reasoned it would have to review the Kentucky Supreme Court's conclusion that DLX did not have a final decision, and hold the opposite, in order to satisfy *Williamson*'s first prong. While the Kentucky Supreme Court appears to have commingled two distinct

doctrines (i.e., exhaustion and finality), *see Williamson*, 473 U.S. at 192, I nevertheless agree with the district court's conclusion that the Kentucky Supreme Court's decision implicates the *Rooker-Feldman* doctrine because the Kentucky Supreme Court decided *Williamson* prong one and indicated it lacked jurisdiction over DLX's takings claim based on the lack of a final decision.[2] *See DLX, Inc.*, 42 S.W.3d at 626-27. The district court thus would have had to reapply *Williamson* and conclude the Kentucky Supreme Court "got it wrong," *see Anderson*, 266 F.3d at 492, to proceed any further in its analysis. In other words, under *Williamson*'s first prong, the district court was required to determine whether a final decision imposing an injury existed. The Kentucky Supreme Court, however, had already determined no such decision or injury had occurred. Thus, the only way DLX could assert a successful federal takings claim was for the district court to rule contrary to the Kentucky Supreme Court. *Rooker-Feldman* bars such federal review of state court judgments.

The Court in this case attempts to avoid *Rooker-Feldman* by distinguishing between DLX's state and federal takings claims. *See* Court's Op. at 8. The Court's analysis does not persuade me, however, because the claims are indistinguishable. *See Anderson*, 266 F.3d at 495 (holding *Rooker-Feldman* barred jurisdiction because the requirements of the state takings clause were indistinguishable from the

---

[2] The Court in this case correctly notes that the Kentucky Supreme Court based its holding on the failure to exhaust administrative remedies, *see DLX, Inc.*, 42 S.W.3d at 627, but that exhaustion is "not a component of a federal takings claim." *See* Court's Op. at 8. That the Kentucky Supreme Court may have misapplied *Williamson*, however, is of no moment. The purpose of *Rooker-Feldman* is to preclude lower federal courts from telling state courts they conducted an incorrect analysis or reached the wrong conclusion. *See Gottfried v. Medical Planning Servs.*, 142 F.3d 326, 330 (6th Cir. 1998) (noting only the Supreme Court has jurisdiction to correct state court judgments); *see also* 28 U.S.C. § 1257.

requirements of the Fifth Amendment Takings Clause). As in *Anderson*, little, if any, substantive difference exists between the requirements of the Kentucky Takings Clause, *see* Ky. Const. § 242, and the Fifth Amendment Takings Clause in this case. In fact, the Kentucky Supreme Court has relied upon Supreme Court precedent interpreting the Fifth Amendment Takings Clause to determine what constitutes a taking under Kentucky law. *See Commonwealth v. Stearns Coal and Lumber Co.*, 678 S.W.2d 378, 381 (Ky. 1984). Moreover, the Court in this case notes a state takings claim and federal takings claim are nearly identical for purposes of claim preclusion law. *See* Court's Op. at 13 n.5; *see also id.* at 14 (noting state constitutional takings claim "overlap substantially" with federal takings claim). The Court also concedes *Rooker-Feldman* would likely apply if the Kentucky Supreme Court had reached the merits of DLX's state takings claim. *See id.* at 9 n.2. In the end, the crux of this case is DLX's allegation of *one* taking and *one* injury requiring just compensation. The Kentucky Supreme Court already determined, under *Williamson* prong one, no final decision existed, and thus, no taking or injury had occurred. For the district court to hold otherwise would violate *Rooker-Feldman*.

In sum, the case, in my opinion, should be dismissed under the *Rooker-Feldman* doctrine. The purpose of the *Rooker-Feldman* doctrine is to avoid duplicative appeals and proscribe lower federal courts review of state court decisions. Here, DLX availed itself of state procedures and cannot now take a second bite at the judicial apple in federal court.

## II.

Aside from the *Rooker-Feldman* issue, I disagree with the Court's res judicata analysis and its application of the

"*England* reservation" doctrine. *See* Court's Op. at 11.[3] As the Court correctly notes, DLX did not raise its federal takings claim in state court. Instead, DLX "reserved" its federal claim in its state complaint for later adjudication in federal court. *See id.* at 4. Res judicata normally bars such procedural tactics. *See Donovan v. Thames*, 105 F.3d 291, 295 (6th Cir. 1997) ("Under Kentucky law, res judicata, or claim preclusion, may be used to preclude entire claims that were brought *or should have been brought* in a prior action.") (emphasis added) (internal citation omitted). The Court, however, concludes DLX's purported reservation was proper under the principles established in *England v. Louisiana State Bd. of Med. Exam'r*, 375 U.S. 411 (1964). I disagree because the Court expands the *England*-reservation doctrine beyond its intended scope.

In *England*, the plaintiffs *initially* sought to enjoin application of a state statute in federal court. The district court abstained to allow the state courts the opportunity to interpret the statute. *See England*, 375 U.S. at 413. The plaintiffs thereafter commenced state proceedings, but were unsuccessful. Upon returning to federal court, the plaintiffs revived their constitutional claims; however, the defendant argued the claims were precluded. The Supreme Court held preclusion did not bar the plaintiffs' federal claims because a party remitted to state court by *an abstention order* has the right to return to federal court. *See id.* at 415. Accordingly, under the *England*-reservation doctrine, a plaintiff who finds himself in state court involuntarily due to a district court's *abstention order* may, in certain circumstances, reserve his federal issues for later adjudication in federal court. *See id.* at 421-22.

---

[3] Because the Court refers to both claim and issue preclusion as "res judicata," I do the same.

The *England*-reservation doctrine thus applies only in a case where a party reserves federal questions in state court following federal court abstention. *See id.* at 421; *see also* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4471.1 at 247 (2002) (noting "[t]he core of the England-reservation rule remains unscathed. A party who clearly reserves federal questions following 'Pullman' abstention . . . can return to federal court for decision of the federal issues, free of preclusion."). Moreover, in order for the *England*-reservation doctrine to apply, the federal action must be brought *first* "affording the federal court the opportunity to decide whether to abstain. A plaintiff who elects to go to state court first is likely to be precluded from a second federal action, even if an express reservation is attempted." Wright & Miller, *supra* § 4471.1 at 250. In *Allen v. McCurry*, 449 U.S. 90, 101-02 n.17 (1980), the Supreme Court explained why an *England*-reservation is inapplicable to cases first filed in state court rather than federal court:

> The holding in *England* depended entirely on this Court's view of the purpose of abstention in such a case: Where a plaintiff properly invokes federal-court jurisdiction *in the first instance* on a federal claim, the federal court has a duty to accept that jurisdiction. Abstention may serve only to postpone, rather than to abdicate, jurisdiction, since its purpose is to determine whether resolution of the federal question is even necessary, or to obviate the risk of a federal court's erroneous construction of state law.

(emphasis added). The procedural posture of this case differs significantly from *England*. Here, DLX did not initially file its takings claim in federal court, but first filed its claim in state court. Therefore, a federal court never had the opportunity to abstain and thus, the *England*-reservation doctrine is inapplicable.

The Court unnecessarily attempts to expand the *England*-reservation doctrine beyond the scope of federal abstention in this case. According to the Court, "given *Williamson County*'s ripeness requirements, DLX could not have chosen to file a federal-court action first; therefore, the interaction of *Williamson County*'s ripeness requirements and the doctrine of claim preclusion could possibly operate to keep every regulatory-takings claimant out of federal court." Court's Op. at 14. The Court then applies the *England*-reservation doctrine and, to avoid claim preclusion, declares "[t]he weight of circuit-level authority is therefore clearly in favor of allowing DLX's *England*-style reservation." *Id.* at 18.

To begin, the Court's conclusion that "every regulatory takings claimant" would be excluded from federal court is not entirely accurate. Takings claimants who properly raise their federal claims in state proceedings may seek review in the United States Supreme Court if dissatisfied with the results they obtain from state court. *See* 28 U.S.C. § 1257. Next, courts have generally rejected use of the *England*-reservation doctrine in the takings context and many courts have declined to create an exception rendering res judicata and collateral estoppel inapplicable in Fifth Amendment takings cases. *See* Wright & Miller, *supra* § 4471.1 at 253 (citing cases); *see also Santini v. Connecticut Hazardous Waste Mgmt. Serv.*, 342 F.3d 118, 128 (2d Cir. 2003) (citing cases). Discussing this issue, Wright & Miller reasons:

> The question whether filing a state action first waives the opportunity to reserve federal questions for federal adjudication is tested by situations in which rules other than abstention doctrine require a plaintiff to go first to state court. A clear illustration is provided by the [*Williamson*] rule that a regulatory taking claim is not ripe until the plaintiff has exhausted available state judicial compensation remedies. Attempted reservation of federal issues has been rejected, or at least frowned upon, perhaps because the purpose of this ripeness

doctrine is to provide state courts an opportunity to supervise state regulatory practices.

*See supra* § 4471.1 at 253; *see also Wilkinson v. Pitkin County Bd.*, 142 F.3d 1319, 1325 n.4 (10th Cir. 1998) (noting concern that the ripeness requirement "may, in actuality, almost always result in preclusion of federal claims, regardless of whether reservation is permitted"); *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993) (explaining that mere fact that *Williamson* requires takings claimants to first file in state court "does not prevent the doctrine of res judicata from barring subsequent federal action"); *Peduto v. City of N. Wildwood*, 878 F.2d 725, 729 (3d Cir. 1989) (same); *Griffin v. Rhode Island*, 760 F.2d 359, 360 n.1 (1st Cir. 1985) (explaining *England*-reservation was inapplicable and that "[s]ection 1983 does not override state preclusion law by allowing plaintiffs to first proceed to judgment in state courts and then turn to federal courts for adjudication of federal claims."). In *Allen*, 449 U.S. at 104, the Supreme Court stated simply: "There is, in short, no reason to believe that Congress [through § 1983] intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged in at all."

Perhaps most importantly, allowing a claimant to reserve its federal takings claim in state proceedings undermines the very purpose of *Williamson*'s ripeness requirements. The ripeness requirements for federal takings claims stems from both Article III and the Fifth Amendment. *See Williamson*, 473 U.S. at 186-87, 190-91; *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002). The ripeness requirements are of constitutional dimension because they assist in the determination of whether an injury has occurred for purposes of Article III's case or controversy requirement. *See Arnett*, 281 F.3d at 562. Further, the Fifth Amendment is a self-

executing remedy in state courts and state compensation procedures are constitutionally required. *See First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 316 n.9 (1987). Based upon these antecedent precepts, *Williamson*'s ripeness test compels that a state court make a federal constitutional ruling because the very purpose of state compensation procedures is to address the federal constitutional question. Allowing the reservation of the federal question in state court would undermine the role, as the Supreme Court has described, of state courts in adjudicating federal takings claims. As one commentator explained:

> Some federal courts have suggested that a property owner can reserve the right to litigate federal issues in a federal forum under the doctrine of *England v. Louisiana State Board of Medical Examiners*, but this ought not to work. The England doctrine exists to further the purpose of federal abstention. . . . The doctrine, however, does not apply in the context of the Fifth Amendment which, as construed by the Supreme Court, requires state courts to rule on federal constitutional grounds.

Thomas E. Roberts, *Fifth Amendment Taking Claims in Federal Court*, 24 Urb. Law. 479, 480 (1992).

In sum, the Court erred in applying the *England*-reservation doctrine in this case. A plaintiff, in my view, simply cannot make an *England*-reservation in non-abstention cases. Instead, res judicata applies to bar DLX's federal claim. We generally presume state courts are capable of adjudicating federal claims along with state claims. *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 85-86 (1984); *see also Donovan*, 105 F.3d at 295. Moreover, the Supreme Court has clearly explained that states are required to adjudicate takings claims because, if a state provides just

compensation, resort to a federal forum may be avoided. *See Williamson*, 473 U.S. at 194.[4]

Based on the foregoing, I respectfully concur only in the Court's judgment of dismissal.

---

[4] One final note: After concluding *Rooker-Feldman* and res judicata do not apply, the Court engages in a *Williamson* ripeness analysis but does not resolve *Williamson* prong one. *See* Court's Op. at 22. I do not believe we have the luxury of sidestepping the ripeness issue. As the Court notes, ripeness is a justiciability doctrine partially rooted in Article III's case or controversy requirement. *See id.* at 19 n.8. Consequently, the doctrine raises threshold jurisdictional issues that may not be assumed. *See Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 94 (1998). Further, whether the Court can dismiss a potentially *unripe claim* under the Eleventh Amendment raises a difficult issue. The ripeness doctrine and the Eleventh Amendment both have jurisdictional bases; however, ripeness cannot be waived. *See Florida Ass'n of Rehab. Facilities, Inc. v. Florida Dep't of Health and Rehab. Serv.*, 225 F.3d 1208, 1227 n.14 (11th Cir. 2000). Thus, we should decide whether a claim is ripe before addressing the Eleventh Amendment. *See id.* (noting [a]lthough [courts have] described the issue of Eleventh Amendment immunity as itself one of subject matter jurisdiction, "mootness- *like standing and ripeness* - raises an even more basic question of jurisdiction that cannot be waived and goes to the very heart of the 'case and controversy' requirement of Article III" that must be decided first.) (emphasis added) (internal citations omitted).